## PAINE *v.* CENTRAL VERMONT RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF VERMONT.

Argued April 8, 1886.—Decided May 10, 1886.

In an action in the Circuit Court of the United States, submitted by stipulation of the parties, in accordance with the practice prevailing in the State where the court is held, to the decision of the judge "as referee," the only matter reviewable by this court is error of law in the judgment of the court upon the facts found by the referee.

A promissory note payable on demand, with interest, was made by a railroad corporation to a stockholder for money lent, and with the understanding that assessments to be laid on his shares should, when payable, be considered as payments upon the note. Assessments to a greater amount than the note afterwards became payable, and the difference only was paid by him. *Held,* That the note was paid as between the corporation and the payee, and as against a subsequent endorsee taking the note when overdue.

By the statutes of Massachusetts and of Vermont, promissory notes payable on demand are overdue in sixty days after date.

This was an action of assumpsit, brought October 1, 1878, in the Circuit Court of the United States for the District of Vermont, by a citizen of New York as endorsee, against a Vermont corporation as maker, of the following promissory note:

"$5000.             Boston, July 10th, 1873.

"On demand after date, with interest, we promise to pay to the order of H. B. Wilbur, Treasurer, five thousand dollars.

"CENTRAL VERMONT R. R. Co.,

"As Receivers and Managers Vermont Central, and Vermont and Canada R. R.

"By H. B. WILBUR, Treasurer.

"No. 8.    Value received.    Approved.

"J. GREGORY SMITH, President.

"H. B. WILBUR, Treasurer."

On August 28, 1879, the defendant pleaded the general issue,

with a specification of defence, in accordance with the statutes of Vermont, (Gen. Stat. 1862, ch. 30, §§ 15, 32; Rev. Laws 1880, §§ 908, 909,) that the defendant was organized as a corporation on May 27, 1873; that on July 10, 1873, it delivered the note in suit to John Q. Hoyt, an original subscriber to the defendant's capital stock, and then holding shares of that stock of the par value of $50,000, only partially paid for; that on that day the defendant being in urgent need of money and not having time to regularly lay and collect an assessment on its capital stock, Hoyt advanced to the defendant $5000, and the defendant gave him this note, under an agreement that he should hold it until an assessment covering that amount should be made on his stock, and it was understood and agreed by and between him and the defendant that, when such assessment should be made, the $5000 so advanced should be applied in payment thereof, and the note should be thereby paid and extinguished, and should be surrendered; that on August 10, 1873, such an assessment was made by the defendant upon its capital stock, including Hoyt's shares; that on October 28, 1873, the $5000 advanced as aforesaid was duly applied in payment of that assessment, whereby the note was paid and extinguished, and the note was suffered to remain in his hands through inadvertence; and that the plaintiff received the note from Hoyt long after its payment and extinguishment as above stated, as security for a pre-existing debt from Hoyt to the plaintiff, and with full knowledge of such satisfaction and payment, and after the note had ceased to be current.

On May 16, 1882, the counsel of the parties signed and filed an agreement in writing, by which it was "stipulated and agreed to refer this case to Hon. Hoyt H. Wheeler to try and decide this case as referee."

On September 6, 1882, the referee filed his report, the material parts of which were as follows:

"On the hearing, it appeared from the evidence that in 1872 several persons were in possession of and operating the Vermont Central and Vermont and Canada Railroads as receivers and managers of the Court of Chancery of the State, in Franklin County, and had prepared to issue a series of long-time

bonds, called income and extension bonds, a part of which had not been negotiated. The defendant was chartered with power to temporarily operate those roads, subject to the order of that court, and to assume the contracts of the receivers and managers. Subscriptions to the capital stock of the defendant were opened, and two millions in amount subscribed for April 30, 1873, of which John Q. Hoyt, of the city of New York, subscribed for $50,000, and it was expected by the subscribers that when the company should be organized it would be appointed receiver of those roads, and assume the obligations of the other receivers. Five per cent. of the subscriptions was required by the commissioners of subscription to be paid down. The receivers were in need of funds, and by arrangement with them one of the subscribers advanced $200,000, ten per cent. of the subscriptions, in behalf of all the subscribers, as a temporary loan to the receivers pending the organization of the company and proceedings to carry out the expectations of the subscribers, and a note of that amount was made, and, with $400,000 in amount of the income and extension bonds as collateral security for its payment, delivered to the subscriber making the advance, upon the understanding that the note should be paid if the defendant company did not come into possession of the roads and assume the obligations of the receivers, and stand against the subscriptions for stock if it did.

"The defendant company was organized May 27, 1873; was appointed receiver and manager of the roads June 21, 1873; and went into possession of the roads, assuming the obligations of the former receivers and managers, July 1, 1873. An assessment of thirty per cent on the subscriptions for stock was laid June 24, another of ten per cent August 13, and another of ten per cent October 28, 1873, the last payable on or before December 1, 1873. The assessment of June 24 was paid by the subscribers respectively, including Hoyt. After the arrangement for making the defendant receiver of the roads was consummated, the note of $200,000 was given up, and new notes of the defendant were given, running to the subscribers separately, each in proportion to the amount of his subscription. The other subscribers paid to the one who made the advance

each his proportion of it, and received the notes and a proportionate amount of the collateral bonds. Hoyt paid $5000, and received the note in suit and $10,000 of the bonds. Hoyt paid the assessment of August 13 and one half the assessment of October 28; the other half of the latter was rescinded; and stock issued for one half the amount subscribed. The assessments paid amounted to fifty per cent. of the subscription. Hoyt paid, as stated, fifty per cent., and no more, of his subscription. There was no other consideration for this note; and by the understanding of the parties it was to be delivered up, with the collateral bonds, on delivery to him of stock certificates for his stock.

"About November 1, 1873, Hoyt became indebted to the plaintiff, at New York, for $7000 lent, with the understanding that the loan should be increased to $10,000, and delivered this note and these bonds to him as security for the payment of the loan. The plaintiff at that time knew from previous conversations with Hoyt generally about the subscription for stock and the situation and circumstances of the roads; but he did not know before, and was not then informed, that the note was to stand against the subscription for the stock, nor that the bonds, which then had a long time to run, were collateral to the note, but took all of them supposing that they were valid securities for what they purported to be."

"Certificates of stock were issued for all the subscribers in 1874, and delivered to them, and all but Hoyt delivered up the notes and bonds. He endeavored to procure the note and bonds of the plaintiff to deliver up to the defendant, but was unable to do so."

"In April, 1876, the plaintiff called on the president of the defendant for payment of the note in suit, who told him the circumstances under which the note was given, but did not state that they would be relied on as a defence to the note, or that any question would be made about its validity, and requested him to wait and endeavor to get payment from Hoyt, and encouraged him that he would succeed in doing so. He had a similar interview with a like result afterwards, the president adding that if Hoyt did not pay the plaintiff's note the defendant would not

ask him to wait again, but would provide for the payment of this one.   Just before this suit was brought, a similar interview was had, during which the president told him that he thought and had been advised that the circumstances under which the note was given would constitute a good defence to the note, and did not pay it.

" The income and extension bonds were sold in the market, March 24, 1881, for $5000, less $12.50 commission, without notice to Hoyt or the defendant.   They had been worth more while the plaintiff held them, but this was their then market value.

" The note is made a part of this report.   It was executed as to time and place according to its purport."

" All the evidence showing the circumstances under which the note was given, and the proceedings in relation to it, were seasonably objected to, and admitted against the objections.

" The respective rights of the parties to recover in this action are, upon these facts, submitted to the court.

"  Hoyt H. Wheeler, Referee."

The record stated that afterwards "said cause came on for trial, upon the report of the referee, before the Honorable Hoyt H. Wheeler, District Judge of the United States within and for the District of Vermont, and, after hearing the arguments of counsel for the plaintiff and defendant, the court, on November 7, 1882, filed its decision in said cause, rendering judgment for the defendant," being the opinion reported in 14 Fed. Rep. 269.

On the same day, judgment for the defendant was entered upon the docket, and four days afterwards the following order was filed:         .

" Upon the report of the referee the court rendered judgment for the defendant, to which decision and judgment the plaintiff excepted.   Exceptions allowed and ordered to be placed on record.                    " Hoyt H. Wheeler."

*Mr. John F. Dillon* for plaintiff in error.

The note in suit was not overdue when transferred to plain-

tiff. Instances may be readily cited where the courts, applying the doctrine of reasonable time to demand notes, have held that the presumption of dishonor was not justified upon the lapse of periods ranging from three months to a year and a half, or more. *Vreeland* v. *Hyde*, 2 Hall, N. Y. 429 (19 months); *Hendricks* v. *Judah*, 1 Johns. 319 (1 year); *Sanford* v. *Mickles*, 4 Johns. 224 (5 months); *Chartered Mercantile Bank* v. *Dickson*, L. R., 3 P. C. 574 (10 months); *Merritt* v. *Todd*, 23 N. Y. 28 (3 years). There can be, in the nature of things, no arbitrary limit of reasonable time applied to demand notes. Each case stands upon its own peculiar circumstances. This court has thus presented the rule in *Morgan* v. *United States*, 113 U. S. 476, 501. Mr. Justice Matthews, delivering the opinion of the court, *arguendo*, says: "The rule, as to ordinary negotiable paper, payable on demand, is that it is not due, without demand, until after the lapse of a reasonable time within which to make demand; and what the length of that reasonable time is may vary according to the circumstances of particular cases, and must be governed very largely by the intentions of the parties, as manifested in the character of the paper itself, and the purposes for which it is known to have been created and put in circulation." See also Daniel, Neg. Inst. 451; *Leith Banking Co.* v. *Walker*, 14 Shaw, Dunlop & Bell, 332; *Rhodes* v. *Seymour*, 36 Conn. 1, 6.

In New York it is "settled law that a note payable on demand *with interest* is a *continuing security* against an endorser until actual demand." *Shutts* v. *Fingar* (N. Y. Court of Appeals, Nov. 24, 1885), 100 N. Y. 539; *Parker* v. *Stroud*, 98 N. Y. 379; *Merritt* v. *Todd*, 23 N. Y. 29; *Pardee* v. *Fish*, 60 N. Y. 265. In England a promissory note on demand *with interest* is regarded as a continuing security. *Brooks* v. *Mitchell*, 9 M. & W. 15; *Gascoyne* v. *Smith*, M'Clel. & Yo. 338; *Barough* v. *White*, 6 D. & R. 379. As to the effect of the provision for interest as bearing on the question of apparent intention, see *Wethey* v. *Andrews*, 3 Hill, 582; *Lockwood* v. *Crawford*, 18 Conn. 311.

It appears by the record that the $5000 loaned on the note in suit was a part of sums borrowed by the company for the

purpose of enabling it to carry on its operations pending the coming in of instalments on subscriptions to its capital stock. The case was one of loan to a debtor presently unable to repay, but assured of large resources in the future. It was transferred long before the time of its stipulated return (as alleged) and while it was still a subsisting obligation unpaid and undischarged. It was transferred at a time when the company intended that it should be outstanding, and hence transferable. Under the evidence offered by the company, it is hard to conceive how it can avail itself of a presumption which is not only in conflict with the generally known circumstances of the case, and with the character of the note itself, but in direct conflict with the facts relied on by the defence. The presumption of dishonor is not available to one who affirmatively shows that his obligation was to remain outstanding for a much longer time than the time at which, as he asserts, the presumption should arise.

*Mr. Dillon* argued other points which were not considered by the court in its opinion.

*Mr. George F. Edmunds* and *Mr. Guy C. Noble* for defendant in error. *Mr. Daniel Roberts* and *Mr. E. C. Smith* were with them on the brief.

Mr. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

This case was not submitted to the decision of the court without a jury, pursuant to the Revised Statutes of the United States, §§ 649, 700; but to the decision of the judge as referee, in accordance with the statutes and practice of Vermont. Gen. Stat. 1862, ch. 30, § 52; Rev. Laws 1880, § 985; *White* v. *White*, 21 Vt. 250; *Melendy* v. *Spaulding*, 54 Vt. 517. The only question presented by the writ of error, therefore, is whether there is any error of law in the judgment rendered by the court upon the facts found by the referee. See *Bond* v. *Dustin*, 112 U. S. 604, 606, 607, and cases there cited.

The report of the referee, although a little obscure in parts, sufficiently shows that the material facts were as follows : Sub-

scriptions were made to the capital stock of the defendant corporation to the amount of two millions of dollars (of which Hoyt subscribed $50,000), with the expectation that the defendant, when organized as a corporation, should be appointed, pursuant to its charter, receiver of two other railroad corporations, and should assume the obligations of the former receivers. Those receivers were short of money, and by arrangement with them one of the subscribers, in behalf of all, advanced as a temporary loan to the receivers $200,000 (ten per cent. of the whole subscription), and a note for that amount was made to him, with the understanding that the note should be paid if the defendant did not come into possession of the roads and assume the obligations of the receivers, and should "stand against the subscriptions for stock if it did." After the defendant had been organized and been appointed receiver, and had assumed the obligations of the former receivers, the note of $200,000 was given up, and instead thereof the defendant gave new notes to each subscriber separately for ten per cent. of the amount of his subscription, and each of the other subscribers paid his proportion of the sum of $200,000 to the one who had advanced that sum. Hoyt paid him $5000, and received the note in suit, which was made and dated at Boston, July 10, 1873, and was payable on demand, with interest. The assessments laid on the subscriptions for stock amounted to fifty per cent., of which five per cent. was paid at the time of subscribing; thirty per cent. was laid June 24, which is stated to have been "paid by the subscribers respectively, including Hoyt;" ten per cent. was laid August 13, and five per cent. laid October 24 and payable December 1, 1873, both of which Hoyt paid. This part of the report of the referee, after stating the above facts, concludes thus: "The assessments paid amounted to fifty per cent of the subscriptions. Hoyt paid, as stated, fifty per cent., and no more, of his subscription. There was no other consideration for this note; and by the understanding of the parties it was to be delivered up, with the collateral bonds, on delivery to him of stock certificates for his stock."

It is evident that the ten per cent. on Hoyt's stock, which had been included in the sum of $200,000 stated to have been

originally advanced by the lender "in behalf of all the subscribers," and which was repaid to him by Hoyt when the notes to the several subscribers were substituted for the single note for the whole original advance, is to be considered as part of the fifty per cent. paid by Hoyt towards his subscription, and that he paid directly to the defendant only forty per cent. The difference in form of the statements, that "the assessment of June 24 was paid by the subscribers respectively, including Hoyt," but that "Hoyt paid" the two later assessments, is, to say the least, quite consistent with this view. And any other is wholly inconsistent with the ultimate facts expressly found, that "Hoyt paid, as stated, fifty per cent., and no more, of his subscription," and that "there was no other consideration for this note."

The effect of the agreement between the defendant corporation and Hoyt was that the assessments to be laid upon his stock in the corporation should, when payable, be not only set off against, but considered as payments upon, the note for $5000 from the corporation to him, now in suit. When Hoyt delivered this note to the plaintiff, on November 1, 1873, the assessments already due and payable upon his stock amounted to much more. As between the defendant and Hoyt, therefore, as well as against any one who took this note from Hoyt, when overdue, the note had been paid. *American Bank* v. *Jenness*, 2 Met. 288; *Gilson* v. *Gilson*, 16 Vt. 464.

In this country, a promissory note payable on demand has always been held to be overdue, so as to subject any one taking it to all defences to which it would be open in the hands of the payee, unless transferred within a reasonable time after its date; and what is reasonable time is a question of law, depending upon all the circumstances of the particular case. *Morgan* v. *United States,* 113 U. S. 476, 501; *Losee* v. *Dunkin,* 7 Johns. 70; *Sylvester* v. *Crapo,* 15 Pick. 92; *Dennett* v. *Leland,* 13 Vt. 485; *Camp* v. *Clark,* 14 Vt. 387. See also *Chartered Mercantile Bank* v. *Dickson,* L. R. 3 P. C. 574, 579.

The difficulties of applying this test, and the convenience of a more definite rule, have led the legislatures of many States to regulate the matter by statute; and before the mak-

ing of the note in suit the statutes both of Massachusetts and of Vermont had defined reasonable time for this purpose to be sixty days from the date of the note.   Mass. Gen. Stat. 1860, ch. 53, §§ 8, 10;  Pub. Stat. 1882, ch. 77, §§ 12, 14;  Vermont Stat. 1870, ch. 70;  Rev. Laws 1880, § 2013.   The power of the State legislatures to establish such a rule prospectively, with regard to promissory notes made and payable within their respective jurisdictions, has not been and cannot be doubted.

The note in suit was endorsed to the plaintiff more than sixty days after its date.   It was made in Massachusetts, and, if not payable there, was payable in Vermont, where the defendant was incorporated.   The construction and effect of the contract must be governed by the law of the one or the other of those States; and it is superfluous to consider by which, because by the law of either the note was overdue when the plaintiff took it, and therefore he cannot recover upon it.

As to the evidence, stated in the report of the referee, upon which the plaintiff relies as tending to prove a promise to himself by the defendant to pay the note, it is sufficient to say that, it not being shown that the plaintiff, in consideration of or reliance upon such a promise, either agreed to forbear or actually forbore to sue, there was no consideration for the promise, and no ground for giving it effect as an estoppel.

*Judgment affirmed.*