## J. R. IRION v. ESKRIGGE & McLEOD.

Decided November 20, 1902.

**Contract—Guaranty—Construction.**

Where defendant's agent made a sale of cotton to plaintiffs without authority, and in settlement of the matter defendant guaranteed that the agent would ship to plaintiffs' order a stated number of bales of cotton, this was not a guaranty of the quality specified in the original contract, which defendant had repudiated.

Appeal from the District Court of Rusk County. Tried below before Hon. Richard B. Levy.

*W. C. Buford* and *John R. Arnold,* for appellant.

*Allen & Dohoney,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit for damages for the alleged breach of a contract for the sale of cotton, brought by the appellees against the appellant. The petition alleges that plaintiffs on the 1st day of February, 1899, contracted with the defendant through his agent, Newell W. White, for the purchase of 281 bales of cotton of the grades and quality mentioned in said contract and at the prices per pound therein stipulated, and that by the terms of said contract the defendant guaranteed the quality and weight of said cotton. That in compliance with said contract the defendant in the spring of 1899 shipped to plaintiffs 281 bales of cotton and drew on them with bills of lading attached for the contract price of same, and that relying upon the said guarantee of defendant and the representation contained in his letters and the invoices for said cotton, they paid said drafts. That when said cotton reached its destination it was found to be of inferior grade and quality and short in weights, and was in such condition when shipped by the defendant. The damage claimed in the petition is the difference in the value of the cotton shipped by the defendant and the value of cotton of the quality and weight contracted to be delivered by him at the time and place of the delivery, which is alleged to be the sum of $1022.

The defendant answered denying under oath the authority of White to make the contract; and among other defenses averred that if he ever made such contract it was discharged and satisfied by a subsequent agreement entered into between himself and plaintiffs, by the terms of which defendant only guaranteed that White would ship the plaintiffs 281 bales of cotton during the month of April, 1899, and the defendant was expressly released from any guarantee as to quality and weight of the cotton, the plaintiffs agreeing to accept the classification and weight fixed by the said White.

In answer to defendant's denial of White's agency, the plaintiffs filed a supplemental petition alleging a ratification by defendant of the contract made by White with the plaintiffs.

The cause was tried by the court below without a jury and judgment rendered for plaintiffs for $983, with interest thereon at 6 per cent from February 1, 1899. From this judgment the defendant prosecutes this appeal.

For the purposes of this opinion the following is a sufficiently comprehensive statement of the material facts disclosed by the record:

On the 15th of October, 1898, Newell W. White, who lived at Tyler, Texas, and was the agent of appellant in buying cotton, wrote to appellees, who were engaged in the business of buying and selling cotton at New Orleans, Louisiana, and Liverpool, England, accepting an offer made by appellees for the purchase of 1000 bales of cotton, f. o. b. cars at Mount Pleasant, Texas. This letter was signed J. R. Irion, per Newell W. White, and was addressed to appellee at Paris, Texas, at which place one of appellees was temporarily residing. Prior to the 29th day of January, 1899, all of this cotton had been shipped to and received by appellees except 281 bales, and drafts drawn for the contract price of same by White in the name of Irion had been paid by appellees and placed to appellant's credit in a Tyler bank. All of the cotton so sold and delivered by White had been purchased by him for appellant as his agent. On the date last named White wrote to appellees requesting a change in the contract as to the quality and grades of the 281 bales of cotton still due under his original contract. This letter was signed by White individually. On the 1st day of February, appellees wrote a letter addressed to J. R. Irion & Co. at Tyler, Texas, agreeing to changes in the contract provided the cotton was shipped in the next ten days. By letter of same date, White, in Irion's name, accepted as satisfactory the changes in the contract suggested by appellees and promised to ship the cotton by the 15th of February. Hearing nothing further in regard to the cotton, on February 22, 1899, appellees wrote to J. R. Irion at Overton, Texas as follows:

NEW ORLEANS, Feb. 22, 1899

"J. R. Irion, Overton, Texas:

"Dear Sir.—We have had cotton bought from you 281 bales since the 27th and 29th of October, through your Mr. White at Tyler, Texas.

This is causing us endless trouble with our clients. Please try and get all this cotton shipped for us by the end of the week. So far all our transactions have been satisfactory, and we trust that the pleasant relation so happily begun will not have to come to an abrupt termination. Yours truly,

"Eskrigge & McLeod."

In reply to this letter appellant on March 6th sent the following telegram and letter to appellees:

"[Telegram.]                              March 6, 1899.
"Eskrigge & McLeod, New Orleans:

"Letter received; investigating transaction. Writing you fully to-day.

"J. R. Irion."

"Overton, Texas, March 6, 1899.
"Messrs. Eskrigge & McLeod, New Orleans, La.:

"Gentlemen.—In reply to your letters I will say that I was very much surprised at their contents, and have investigated the transactions referred to in said letter, and find that I am not responsible for the sales, as Mr. Newell White is employed by me at a salary to buy cotton for me, and has no interest in my business. Giving him the power to buy cotton does not give him the power to sell. However, to help him out of this situation and hoping to begin business with you with a view of selling you a larger lot of cotton next season (understanding that all sales must be made from Overton, Texas, and no telegram from any other point will be recognized by me, as this is my office on account as above you will not send telegrams to any other point). To help 'White' out of this transaction, I will allow him to ship you fifty bales of cotton (middling) which I have on hand, and you wait on him for the balance until he can buy it up during March and April. He to ship the cotton and class it himself and secure freight rates to Liverpool, 116 cents per hundred pounds; should he secure a lower rate you to allow him to add difference of freight to the invoice of cotton. Should he pay over 116, he to subtract difference from invoice; understanding that I do not guarantee grade, as he states to me that his agreement with you was for him to ship cotton and you to take his class, also a 116 freight rate. I find him a good judge of cotton, and don't suppose you would object to his class. I only mention this. If said agreement meets with your approval I will see that he ships the cotton, while at the same time I deny any responsibility for him making the sale, but do this to assist your good selves, hoping to secure a large business from you next season as I buy from forty to fifty thousand B-C during the season. Yours truly,

"J. R. Irion."

On March 8th, appellees wrote to appellant declining to accept the set-

tlement proposed in his letter, and demanding a fulfillment of the contract made by White. Appellant made no reply to this letter, and on March 13th, appellees again wrote him at Overton, offering to make a concession in the freight rate which they claimed had been guaranteed by White, but otherwise insisting on the original contract. Receiving no reply to this letter, they telegraphed Irion on March 18th, as follows:

"To J. R. Irion, Overton, Texas:
  "Have no reply our letter thirteenth. Do you accept conditions?
                                        "ESKRIGGE & McLEOD."

Appellant did not reply to this telegram, and on March 20th appellees wrote him that unless they received satisfactory reply by Friday they would place the matter in the hands of their attorney. To this letter appellant on the 23d of March replied by telegram as follows:

                                        "OVERTON, March 23, 1899.
"Eskrigge & McLeod, New Orleans, La.:
  "Your letter of 20th inst. to hand and is having attention; on arrival from Galveston, will allow White to ship cotton 113 rate on condition mentioned in my letter from Overton. Don't pay any attention to letters or telegrams from any point but Overton. My draft will have same signature as Overton letter. Answer immediately.
                                        "J. R. IRION."

Then followed the following telegrams between the parties:

                                        "NEW ORLEANS, March 23, 1899.
"J. R. Irion, Overton, Texas:
  "Will you guarantee shipment of cotton during March and April? Answer immediately.
                                        "ESKRIGGE & McLEOD."

                                        "OVERTON, March 23, 1899.
"Eskrigge & McLeod, New Orleans:
  "Guarantee White will ship 281 B-C during March and April, if this guarantee closes transaction.
                                        "J. R. IRION."

                                        "March 24, 1899.
"To J. R. Irion, Overton:
  "Thanks for guarantee. Go ahead and ship.
                                        "ESKRIGGE & McLEOD."

After the receipt of the last telegram from appellant, on March 23d, appellees testified that they wrote and mailed him a letter in which they acknowledged receipt of his telegram and asked whether he meant to

guarantee the shipment of the cotton during March and April. They demand in this letter that he write them guaranteeing the time of shipment, and that the contract made with White be complied with, and state that unless they have an answer promptly they will let the law take its course. Appellee Eskrigge testified that this letter was mailed at New Orleans in the evening of 23d of March, and the evidence shows that it could not have reached Overton before the night of the 24th. Irion testified that he had no recollection of ever having received it. The telegram of March 24th, on which appellant acted in procuring the cotton to be shipped, was received by him on the morning of that day. Two hundred bales of this cotton was consigned by White, under direction of appellees, to a firm in Liverpool to whom it had been resold. Upon arrival at its destination and examination by the consignees it was found to be of inferior grade and of less weight than the cotton called for in the contract between appellees and White, and described in the invoice and bill of lading upon which payment had been made by appellees.

We think it clear from this evidence that the guarantee of appellant that White would perform his contract extended no further than that he would ship the 281 bales of cotton within the time specified. Whatever may have been the relation of appellant to the original contract, he denied his liability thereon, and only offered in settlement of appellees' demands against him to guarantee the shipment by White of the number of bales then due on the contract, expressly refusing to further guarantee White's performance. This offer was accepted by the appellees by the telegram in which he was told to go ahead and have the cotton shipped. This telegram was sent by appellees with a full understanding of the terms upon which appellant proposed to procure the shipment of the cotton by White, and before the letter of March 23d could possibly have reached appellant if, as testified by appellees, it was mailed to him. This fact was known to appellees, and the only reasonable explanation of the evidence is that appellees, after sending the letter, decided to accept appellant's offer, and so notified him by wire before the letter reached him. If appellant ever received the letter it was after he received the telegram accepting his offer, and he had a perfect right to presume and act on the presumption that the telegram, being later, was intended by appellees to express their final determination in the matter and to close the contract upon the terms proposed by him. There is no finding by the trial court that White was the authorized agent of appellant in the execution of the original contract, and it is doubtful if such finding could be sustained by any evidence in the record. The judgment in appellees' favor is based by the trial court on the finding that the letters and telegrams above set out show a ratification by appellant of the contract made by White. As before stated, we think no such construction can be placed upon this evidence, and that it clearly shows that appellant was only liable as a guarantor that

White would ship the 281 bales of cotton. The cotton having been shipped within the time specified, appellant's liability ceased, and the judgment of the court below should have been for the defendant. Such being our conclusion of the legal effect of the undisputed facts, the judgment of the court below will be reversed, and judgment here rendered in favor of appellant.

*Reversed and rendered.*