STATE NAT. BANK v. EAST COAST OIL CO. (No. 6130.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 8, 1919. Rehearing Denied Jan. 15, 1919.)

1. BILLS AND NOTES ☞129(3)—SIGHT DRAFT —DATE OF MATURITY.

The only difference between the date of maturity of a paper payable at sight and one payable on demand is that in the former it is a recognized custom to allow three days of grace.

2. BILLS AND NOTES ☞348—SIGHT DRAFT— DATE OF MATURITY—PAST DUE.

Sight draft purchased by plaintiff more than six months after its execution and delivery was "past due," although it had not been presented to the drawee for payment.

3. BILLS AND NOTES ☞351—OVERDUE DRAFT —RIGHTS OF PURCHASER.

Where sight draft was overdue when purchased by plaintiff, it was subject to the defense of fraud which the drawer had against the payee named in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 582.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by the State National Bank against the East Coast Oil Company and others. Plaintiff dismissed as to one of the unnamed defendants, and the other two unnamed defendants defaulted. From a judgment in its favor against the oil company, plaintiff appeals. Affirmed.

J. L. Browne and A. J. Parker, both of San Antonio, for appellant.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden, Ed. W. Smith, and C. R. Kennon, all of San Antonio, for appellee.

SWEARINGEN, J. The statement of the nature and result of this suit and the issues presented by the petition and answer are accurately expressed in appellee's brief:

"The State National Bank of San Antonio sued the East Coast Oil Company, as maker, and J. W. Barnes, James Segler, and C. H. Bown, as indorsers, of a bill or draft, which reads: 'Good for $1,799.00 gold. Tampico, Mexico, June 30, 1915. At sight you will please pay to the order of J. W. Barnes the sum of one thousand seven hundred ninety-nine and 00/100 dollars, for value received, which you will charge with or without advice of yours truly. To C. B. Udell, Treasurer East Coast Oil Co., S. A., No. 171. Houston, Texas, U. S. A. East Coast Oil Co., S. A., T. R. Batte, Jr., Superintendent.' Indorsed: 'Pay to the order of James Segler. J. W. Barnes. James Segler. C. H. Bown.'

"Plaintiff pleaded that it purchased the draft in due course, for value, without notice, and before maturity.

"Defendant Oil Company answered that the draft was given by it to Barnes in consideration of 25,700 pesos Mexican currency bought by it of Barnes, subject to approval thereof as genuine by the Mexican authorities at Tampico, Mexico, where said transaction occurred, and for no other consideration; that the currency so bought was not genuine but counterfeit, and that all of it (except 600 pesos) was confiscated as counterfeit by the Mexican authorities at Tampico, and was a total loss; that there was fraud in the inception of the draft, and that the consideration therefor had failed, as stated; that Segler somehow obtained possession of the draft from Barnes while they were in jail together for dealing in counterfeit money, and that he obtained same with notice and without consideration; that Segler afterwards came to San Antonio and got hold of Bown and procured Bown to introduce him at the bank and assist him in disposing of said draft, with the fraudulent intention of appropriating same and the proceeds thereof to his own use and benefit; that Bown undertook to help Segler carry out his said fraudulent purpose; that the pretended transfer and assignment of said draft by Segler and Bown to plaintiff was made in January, 1916, about six months after the draft was issued; that the draft was not presented for payment within a reasonable time, and that the holders thereof were inexcusably negligent in not sooner presenting same, and that it was not presented sooner because those holding it knew of said fraud and failure of consideration; that plaintiff did not acquire the draft in due course; that plaintiff, in taking the draft, acted with gross negligence amounting to bad faith and was not an innocent purchaser without notice; that plaintiff did not purchase the draft outright, but simply advanced some money to Segler and Bown and took the draft with the understanding that it would present same to the oil company for payment and that if same was not paid on presentation Segler and Bown would repay to plaintiff the money so advanced to them; that plaintiff had reason to believe, and did believe, that the oil company might have valid defenses to the draft, and therefore

did not buy and take title thereto, but only undertook to handle same for said Segler and Bown in order to assist them in collecting it; that the circumstances attending the acquisition of the draft by plaintiff were sufficient to put it upon notice that there was fraud in some respect in connection therewith, and to require plaintiff, in the exercise of good faith, to make inquiry into the matter; and that such inquiry, if made in good faith and pursued with the slightest diligence, would have led to knowledge of the fraud and failure of consideration.

"Plaintiff dismissed as to Segler. Barnes and Bown defaulted.

"The case was tried before a jury. When the evidence was in, the court instructed the jury to return a verdict for plaintiff against Barnes and Bown for the full amount of the draft, and against the oil company for $42 (the value of the 600 pesos not confiscated) and interest. The verdict was returned as directed, and judgment entered accordingly.

"The plaintiff has appealed from the judgment in its favor against the oil company because same was not for the full amount of the draft."

The first assignment assails the peremptory instruction given the jury. Appellant's proposition is that the negotiable draft drawn by appellant upon itself payable at sight was not overdue when purchased by the appellant bank, because the draft had not been presented to the drawee for payment.

Under the facts of this record, the draft was obtained from the drawer by the fraud of the payee therein and could not be enforced against the drawer. Without detailing other facts, it may be conceded for this assignment that, if the appellant purchased the draft before maturity, it would have been protected by the rule of law favoring a bona fide purchaser for value in due course of trade without notice.

The only question raised by the assignment is whether the sight draft became overdue only after presentation to the drawee for payment.

[1] The only difference between the date of maturity of a paper payable "at sight" and one payable on demand is that in the former it is a recognized custom to allow three days of grace, while a demand paper has no three days of grace. Waggoner v. Gray, 165 S. W. 925; Brown v. Chancellor, 61 Tex. 437.

The Supreme Court of Texas, followed by several of our Courts of Civil Appeals, has unequivocally announced the rule that a paper payable on demand is due when executed, and thereafter is overdue. Cook v. Cook, 19 Tex. 434; Eborn v. Zimpelman, 47 Tex. 503, 26 Am. Rep. 315; Pitschki v. Anderson, 49 Tex. 1; Swift v. Trotti, 52 Tex. 498; Kampmann v. Williams, 70 Tex. 568, 8 S. W. 310; Henry v. Roe, 83 Tex. 446, 18 S. W. 806; Sam v. Ludtke, 203 S. W. 98; Pollard v. Allen, 171 S. W. 530.

The courts of many other states have announced the rule that a "demand" or "sight" paper does not mature until a reasonable time after its execution. And some states have the rule that a sight draft matures only after presentation for payment. Those courts holding the reasonable time doctrine are enumerated in note 90, vol. 8, Corpus Juris, p. 408; 1 Daniel on Neg. Ins. (6th Ed.) § 783. Those decisions holding that presentation only matures the sight draft are collated in 8 Corpus Juris, p. 409, § 605, and note 6.

[2, 3] We must follow the rule announced by the Supreme Court of Texas without inquiring into the relative value of the rationale of the three rules, and hold that the sight draft before us was past due when purchased by the appellant bank, more than six months after the execution and delivery of said draft. Since the draft was overdue when purchased by the appellant, it was subject to the defense of fraud which the drawer had against the payee named in the draft. This offset is expressly authorized by the statute of Texas. Vernon's Sayles' R. C. St. art. 582.

The third assignment presents the same proposition as the first. Both the first and third assignments are overruled.

The second and fourth assignments urge that the sight draft for purposes of transfer did not become overdue until the lapse of a reasonable time after the execution and delivery of the sight draft. As stated in our discussion of the first assignment, the courts of many states sustain appellant's proposition; but the appellate courts of Texas fix the date of maturity of the sight draft as of the date of execution. If the question were an open one in this state, the writer hereof is of the opinion that a demand or sight draft should be past due only after presentation for payment. Such seems to express the intention of the parties. The liability of the drawer is not matured until after presentation to the drawee, and prior to presentation the drawee has no liability. It therefore seems more reasonable to fix the date of maturity of the sight draft after presentation for payment, at which time the liability of all parties connected with the draft, such as drawer, drawee, payee, and indorsers, become certain. It may be that, if this question had been presented upon facts similar to those of this case, our courts would have qualified the rule as herein suggested. However, in deference to the decisions of our appellate courts, we hold that the sight draft was past due when purchased by the appellant more than six months after the sight draft was drawn.

The second and fourth assignments are overruled.

The judgment is affirmed.