### STATE NATIONAL BANK OF SAN ANTONIO v. EAST COAST OIL CO.

Application No. 11074.  Motion No. 4466.  Delivered May 19, 1919.

**Dissenting Opinion—Sight Draft—Innocent Purchaser—Maturity.**

A sight draft drawn by an oil company at Tampico, Mexico, upon its treasurer at Galveston, Texas, on June 30, 1915, and purchased for value, without notice of any defenses, by a bank at San Antonio, before its presentation, on January 20, 1916, was treated by the trial and appellate courts as past due at the time of such purchase (208 S. W., 190) and subject to such defenses on the ground of fraud and lack of consideration as the drawer could have urged had suit been brought by drawee. Application for writ of error by the bank having been refused without written opinion, Mr. Justice Hawkins, on motion of applicant for rehearing, dissents, and is of the opinion that such application should have been granted, reviewing numerous authorities, holding: (1) That such instrument was due immediately upon its execution; (2) that it was due only after presentation; (3) that it became due only on expiration of a reasonable time for presentation, usually a question of fact; the state of the decisions demanding, in his opinion an authoritative ruling, settling such question. (Pp. 510-526.)

Motion in the Supreme Court for rehearing on an application for writ of error which had been refused.

The State National Bank of San Antonio sued the East Coast Oil Co., S. A., and others, and appealed from a small judgment in its favor against the first named defendant. This being affirmed, appellant applied for writ of error. The opinion on appeal is reported in 208 S. W., 190.

*J. L. Brown* and *A. J. Parker,* for appellant.

*Baker, Botts, Parker & Garwood, Templeton, Brooks, Napier & Ogden, Ed. W. Smith* and *C. R. Kennon,* for respondent.

MR. JUSTICE HAWKINS delivered the following dissenting opinion:

That, for all purposes, and although never actually presented for payment, a draft drawn payable "at sight" and put into circulation becomes due and payable at expiration of three days of grace thereafter; and, consequently, in all instances, any subsequent purchaser of such draft, no matter how he may acquire it, takes it *after maturity,* and, therefore, subject to all equities existing between the original parties, is, in legal effect, the decision of this court in refusing, in this case,

the bank's application for a writ of error, and in overruling its motion for a rehearing, all without a written opinion.

The draft here in controversy, on the Oil Company, of Houston, Texas, dated Tampico, Mexico, June 20, 1915, drawn payable "at sight," was purchased in San Antonio, Texas, by the bank, on January 20, 1916, in due course of business, for a valuable consideration, without knowledge or notice of any existing defense against it, and before it had been presented to the drawee for payment.

Clearly the bank is entitled to a judgment against the oil company, for, not merely a small part, but all, of the amount called for on the face of said draft, unless the draft had matured before the bank bought it. That proposition does not conflict with the theory which controlled the disposition of this case in all the courts.

As to the far greater portion of the amount of the draft, a defensive plea of the drawee was sustained, in the trial court, pursuant to a peremptory instruction to the jury, which seems to have been given upon the theory that, under the facts stated, said draft had *matured, as a matter of law,* prior to the purchase thereof by the bank; and upon that point of law this case turns.

Plaintiff in error, the bank, contends that the case should have been submitted to the jury on the issue as to whether, under all the facts and circumstances, a reasonable time for presentation of the draft for payment had elapsed, maturing the paper, prior to acquisition thereof by the bank.

The following special charge was requested by the bank, and refused by the court:

"The jury is instructed that the draft sued upon by plaintiff is good in the hands of the plaintiff, provided that when plaintiff purchased the same it had not been in circulation for an unreasonable length of time, and you are therefore instructed to determine the following question:

"Had the draft at the time of purchase of same been in circulation an unreasonable length of time? You will answer this question yes or no.

"In determining this question you are instructed that reasonable time is such time as would be taken by a man of ordinary business prudence under like circumstances, and in determining this question you will take into consideration the form of the draft, location of parties, mail and transportation facilities and business conditions existing in the countries where issued and where payable."

The record before us discloses the fact that there was evidence tending to show that Tampico is on the east coast of the Gulf of Mexico, and several hundred miles from Texas; that at the time of the issuance of said draft and continuously after purchase of said draft by plaintiff in error, there existed in the Republic of Mexico seriously disturbed political conditions resulting in an impairment of facilities for getting drafts out of Mexico, and particularly in disturbance and delay of the mails; and that during the existence of said conditions it

was not unusual for such commercial paper to remain in circulation without presentation for payment as long as this particular draft had remained unpresented for payment. The revolutionary conditions existing in Mexico during the period involved is matter of public history of which the courts will take judicial notice.

The views of the trial court upon the issue as to whether the draft had matured prior to purchase thereof by the bank, under which that issue was treated as being purely *one of law,* to be determined by the court, without the aid of the jury, prevailed in the Court of Civil Appeals and in this court. However, the decision of the intermediate appellate court thereon, 208 S. W., 190, declaredly was so rendered out of deference to the hereinafter mentioned Texas decisions.

In the opinion of the Court of Civil Appeals in this case, Associate Justice Swearingen said:

"The second and fourth assignments urge that the sight draft for purposes of transfer did not become overdue until the lapse of a reasonable time after the execution and delivery of the sight draft. As stated in our discussion of the first assignment, the courts of many States sustain appellant's proposition, but the appellate courts of Texas fix the date of maturity of the sight draft as of the date of execution. If the question were an open one in this State, the writer thereof is of the opinion that a demand or sight draft should be past due only after presentation for payment. Such seems to express the intention of the parties. The liability of the drawer is not matured until after presentation to the drawee and prior to the presentation the drawee has no liability. It, therefore, seems more reasonable to fix the date of maturity of the sight draft after presentation for payment, at which time the liability of all parties connected with the draft, as such drawer, drawee, payee and indorsers become certain. It may be that if this question had been presented upon facts similar to those of this case our courts would have qualified the rule as herein suggested. However, in deference to the decisions of our appellate courts we hold that the sight draft was past due when purchased by the appellant more than six months after the sight draft was drawn."

Logically, the decision in the present case is applicable, in principle, to drafts payable "on demand," making much, if not all, such paper mature absolutely, for even *purposes of transfer,* immediately upon original delivery thereof, without presentation for payment; since, as to time of maturity, the distinction between sight drafts and demand drafts is that the former are, but the latter are not, entitled to three days of grace. R. S., art. 593; Brown v. Chancellor, 61 Texas, 437; Banking Co. v. Bank, 165 S. W., 922.

Likewise the rule so laid down in the case now before us may be deemed applicable, for various, if not all, purposes of *transfer* (as well as for purposes of *suit* and of *limitation*), to all demand notes *not bearing interest,* and, perhaps, to all demand notes. The effect is to render all affected commercial paper practically non-negotiable.

If the rule in this State for determining, *for such purposes of transfer,* the time of maturity of drafts drawn payable upon other than a fixed date, or even of demand notes, is as has been so held in the present case, it seems never to have been expressly so declared by this court heretofore; and it seems not to have been the law in England, or in Canada, or in most of the American States.  The decision in this case seems to be in plain contravention of the common law, which is in force in this State except as modified by our Constitution or statutes.  Brown v. Chancellor, 61 Texas, 443; Grigsby v. Reib, 105 Texas, 597, 153 S. W., 1124; White v. White, 108 Texas, 582, 196 S. W., 508, L. R. A., 1918A, 339.

However, this court has, indeed, held, heretofore, that for purposes of *filing and maintaining suit thereon,* and also for purposes of *limitation,* a promissory note drawn payable "on demand" is due from the moment of its delivery, without presentation or demand for payment. Cook v. Cook, 19 Texas, 434; Eborn v. Zimpleman, 47 Texas, 503, 26 Am. Rep., 315; Pitschki v. Anderson, 49 Texas, 1; Swift v. Trotti, 52 Texas, 498; Brown v. Chancellor, 61 Texas, 437; Henry v. Roe, 83 Texas, 446, 18 S. W., 806.   See, also, Schraum v. Nolte, 1 Texas App. C. C. (White & W.), sec. 1156; Banking Co. v. Bank, 165 S. W., 922: Pollard v. Allen, 171 S. W., 530; Sam v. Ludtke, 203 S. W., 98.

The rule for determining, for *purposes of suit* and for *purposes of limitation,* the time of maturity of demand notes and, apparently, of demand drafts and of sight drafts, having been thus seemingly settled in this State by said former decisions of this court, it would, indeed, seem somewhat incongruous, and, possibly, impracticable, now to declare and enforce another rule for determining, for all or any of the *purposes of transfer,* the time of maturity of such commercial paper; and, upon that view of the matter, I concurred, originally, with my associates, in refusing the writ of error.

However, upon further and more careful consideration of the subject, including a more careful study of said former decisions of this court—and, particularly, inasmuch as the present case involves no direct issue *as to when suit might be filed and limitation begin to run,* but, rather, *the rights of an indorsee of a draft, claiming to be an innocent purchaser,*—I do not now believe that said former decisions apply, with controlling force, to the facts of this case.

Moreover, and aside from that question, such careful, though incomplete, investigation of the subject as I have been able, thus far, to make, has impressed my mind with the idea that said decision in this case may be, and probably is, erroneous in principle, and that, certainly, it is contrary to the great weight of authority, elsewhere, as reflected by decisions of courts and by standard text-books.

Cook v. Cook, wherein this court declared that "an account or note payable on demand is payable immediately," was a suit for money

loaned under a contract for repayment on demand, and not involving rights of an indorsee claiming to be an innocent purchaser.

The above cited later Texas cases on the general subject, upon which the Court of Civil Appeals grounded its decision in this case, seem to have been decided in reliance, mainly, on Cook v. Cook, supra. It is a significant fact that not one of them involved, as this case does, the *rights of an indorsee* claiming protection as an innocent purchaser, for value, before maturity.

But in some of the Texas cases, wherein were directly involved the *rights of indorsees* of sight paper or demand paper, this court has adhered to what I may term *the rule of reasonable time* in which to present the paper for payment, during which period the paper is not to be treated as overdue.

Jordan v. Wheeler, 20 Texas, 699, was a suit by an indorsee against an indorser on a sight draft, in which the defendant resisted on the ground that the bill had not been presented for acceptance, and on the ground that it had not been presented to the drawees within a reasonable time. Therein this court said: "With respect to the time when a bill payable at sight should be presented for acceptance, in the absence of any determinate usage of trade, fixing a definite time, the only rule is that it must be presented within a reasonable time. Chit., Bills, 247; Story, Bills, sec. 231. And what will be a reasonable time must depend upon all the circumstances of each case. Id. 'If (says Story) the bill is kept in circulation, and not held by any one holder, through whose hands it passes, an unreasonable time, it seems difficult to assign any particular time in which it ought to be presented for acceptance; in respect to foreign bills, the conveniences, if not the necessities, of trade seem to require, that a very liberal allowance of time, both for the transmission and presentation of bills, should be allowed to every successive holder.' Id.; 20 Johns., 176, 146; 4 Mass., 336. In the case of a foreign bill payable at sight, it has been decided that it is no laches to put it into circulation before acceptance, and to keep it in circulation without acceptance, as long as the convenience of successive holders may require; and it has even been held, that if a bill, drawn at three days' sight, were kept out in that way for a year this would not be laches. Chit., Bills, 275."

In Chambers v. Hill, 26 Texas, 473, this court said: "The material question in the case is whether, the bill was duly presented for payment. No time of payment being specified, the bill was payable on demand. Byles on Bills, 165. And as respects the time when presentment for payment must be made, the rule is, that it must be within a reasonable time after the bill has been received, depending on distance and other circumstances; otherwise the drawer and indorsers will be discharged. Id., 163; Chit. on Bills, 354, 369, 379; Story on Bills, sec. 325. What is a reasonable time, when there is no determinate usage of trade, must depend upon all the circumstances of each particular case (id., 221); and when the facts have been ascertained or are

not disputed, the reasonableness of the time is a question of law; but when the facts are contested, the question of law becomes mixed with fact, and is for the decision of the jury. Chit. on Bills, 369, 379; Byles on Bills, 163. As respects the rule of law, Chitty says there is no better settled general rule than that the presentment must be made within a reasonable time. which must be accommodated to other business affairs of life."

Nichols v. Blackmore, 27 Texas, 587, was a suit by an indorsee upon a sight draft drawn in Freestone County on merchants in Galveston. Therein this court said: "The only question presented is, whether the holder of the draft used proper diligence in presenting it to the drawees for payment, or was he guilty of laches whereby he lost his recourse upon the drawer? It is well settled that in the case of a draft drawn at sight, or so many days after sight, the holder must present it for payment within a reasonable time. And in determining the question of reasonable time, the courts will consider all the circumstances by which the question of diligence can be affected, as, for instance, the distance between the place of residence of the drawer and the place of residence of the drawee, the mail facilities of the country, etc. The general usage of the country in respect to such paper will also enter into the consideration of the question. It is also to be remarked that the idea of reasonable time is opposed to the idea of great diligence or promptitude. The question is one of a large class which frequently produce great embarrassment, from the extreme difficulty in many cases of drawing a line by which reasonable time can be separated from laches."

In this connection the following excerpt from Kampmann v. Williams, 70 Texas, 568, 8 S. W., 310, is interesting: "An allegation of the petition that the debt became due on the fifth day of December, demand of payment having been made on that day, would not have the effect to prevent the draft from becoming payable until that time; but the undertaking being payable on demand, it became due on the twenty-third of June, the date of acceptance, *or as soon thereafter as demand for payment could reasonably have been made.* Daniel on Negotiable Instruments, 542, section 605; Cook v. Cook, 19 Texas, 437." (Italics mine.) There the draft seems to have been accepted. And in Banking Co. v. Bank, 165 S. W., 925, one of our Courts of Civil Appeals said: "A bill payable on demand is due, and action thereon may be brought, at once. . . . The bill is payable on the day of its date, *or within a reasonable time.*" (Italics mine.)

In searching for the proper rule for ascertaining the time of maturity of demand paper the decisions in the adjudicated cases, and the text-books, also, with marked contrariety of views, draw or discuss various distinctions between notes and checks or drafts, and between notes bearing interest and other notes, and between purposes of *suit and limitation* and purposes of *transfer,* and as to the latter purposes, still fur-

ther distinctions as among various parties to the transactions, such as payee and maker, indorsee and maker, and indorsee and indorser.

English decisions upon the general question, and more particularly *where the note bears interest,* are not entirely uniform, and the effect of several of them has been variously understood, in England and in America. Barough v. White, 4 B. & C., 325, 107 Eng. Rep. Reprint, 1080, 10 E. C. L., 600, 2 C. & P., 8, 12 E. C. L., 4, 6 Dowl. & R., 379, 3 L. J. K. B., 227; Norton v. Ellam, 2 Mees. & Wel. Exch., 461; Cook v. Cook, 19 Texas, 434; Merritt v. Todd, 23 N. Y., 28, 80 Am. Dec., 243; Wethey & Andrews, 3 Hill (N. Y.), 582, citing Dowl. & R., 379; Herrick v. Woolverton, 41 N. Y., 581, 1 Am. Rep., 465, and English cases cited; Carll v. Brown, 2 Mich., 401; Dennett v. Wyman, 13 Vt., 485; Atlantic Co. v. Tredick, 5 R. I., 171; Selwin's N. P., 3d ed., 352; Chartered Mercantile Bank v. Dickson, L. R., 3 P. C., 574.

It is true, also, that various English courts have held that, under certain circumstances, and *for purposes of suit,* and for purposes of *limitation,* demand notes *not bearing interest* mature upon original delivery. Herrick v. Woolverton, supra, and c. c. Whether the interest feature was material or not has involved much divergence in conclusions of various English and American judges.

Nevertheless, even in England a different rule seems to have been applied, for purposes of transfer, and particularly as affecting the rights of one claiming to be an innocent purchaser in determining the time of maturity of commercial paper drawn payable on demand. Heywood v. Watson, 4 Bing., 496, 133 E. C. L., 605; Nash v. De Freville, 2 Q. B., 72; Glasscock v. Balls, 24 Q. B. D., 13; Brooks v. Mitchell, 9 Mees. & Wel., 15; Cripps v. Davis, 12 Mees. & Wel., 159.

So, also, as to the Canadian case, Bank v. Electric Co., 24 Ont. L. Rep., 57, which rests upon a construction and application of section 182 of the local Bills of Exchange Act, which declared, in substance, that a demand note is not to be deemed overdue when negotiated simply because a reasonable time for presenting it for payment had elapsed. See, also, Thorne v. Scoville, 4 N. Bruns., 558.

In Norton v. Ellam, supra, decided in 1837, and cited approvingly by this court in Cook v. Cook, supra, it was, indeed, held, through Parke, B., that on a demand note, bearing interest, limitation runs from the date of the note. The stipulation for interest was there declared immaterial, except that thereby the debt increases from day to day. That case was declared to be "quite different from the case of a note payable at sight, because there, by the terms of the contract, it must be shown before the action is brought." But in that case the issue, limitation, involved only the original parties to the obligation, and not, as does the present case, the rights of an indorsee claiming to have been an innocent purchaser. In this connection it is interesting to note that in deciding several later cases, which, like the present case, *involved rights of indorsees,* Baron Parke declined to apply the rule so enunciated by him, previously, in Norton v. Ellam, in which only the original parties

to the note were concerned. It seems to be that the stated difference
in the status of the parties to the transactions, and that only, accounts
for the distinction made in the two lines of decisions, in both England
and the United States, and thus largely reconciles what, at first blush,
appears to be a serious conflict in decisions.

One such later case was Brooks v. Mitchell, supra, decided in 1841.
The issues were whether the demand note, with interest, dated Decem-
ber 24, 1824, was indorsed by Evans to Royle, before the bankruptcy of
Evans, in August, 1836, and, if so, whether the defendant gave there-
for to Royle a valuable consideration, without knowledge that Royle had
given no value to Evans. Therein the court held that the note which
had run more than thirteen years before the endorsement to Royle, and
*on which no interest had been paid for years,* was not then overdue.
Parke, B., for the court, all concurring, said: "If a promissory note
payable on demand, is, after a certain time, to be treated as overdue,
although payment has not been demanded, it is no longer a negotiable
instrument. But a promissory note payable on demand is intended to
be a continuing security." He added: "It is quite unlike a cheque,
which is intended to be presented speedily."

In another such later case, Cripps v. Davis, supra, decided in 1843,
which was an action by indorsees against the maker of several promis-
sory notes, one due at three months and the others on demand, the
court held a plea of payment bad for not showing distinctly that the
notes were overdue when indorsed to plaintiffs. Baron Parke said:
"But may not a bill or note payable on demand be indorsed over, there
being nothing on the face of it to show that it is overdue? The reason
why a party who takes an overdue bill or note takes it with all equities,
is because on the face of it it carries suspicion; that does not apply to
the case of a bill or note payable on demand."

Even in Heywood v. Watson, decided in 1828 (prior to Norton v.
Ellam), plaintiffs sued as indorsees of a demand note dated February
10, 1824, and indorsed by the payee to plaintiffs before June, 1826,
the precise date of such indorsement not being shown. It was held
that plaintiffs were entitled to recover. The court, through Parke, J.,
said: "The action is brought on a note payable to order, and indorsed
to the plaintiffs, who have a clear right to sue. It has been urged,
that they should have inquired into the circumstances attending the
making of the note; but they had no notice of those circumstances, nor
any ground of suspicion to put them on inquiry; for though the note
was made in 1824, it was payable on demand, and therefore could not
be esteemed overdue till demand had been made."

In Glasscock v. Balls (1889) Lord Esher said: "In this case the
plaintiff sues the maker of a promissory note payable on demand as
indorsee. It was admitted that the plaintiff was indorsee of the note
for value without notice of anything that had occurred. The plaintiff
can not be said to have taken the note when overdue, because it was
not shewn that payment was ever applied for, and the cases shew that

such a note is not to be treated as overdue merely because it is payable on demand and bears date some time back. Under such circumstances prima facie the indorsee for value without notice is entitled to recover on the note."

In Nash v. De Freville (1900), under somewhat complicated facts, the equities of indorsees were upheld as being superior to those of the maker of demand notes, into whose hands the notes had returned under circumstances which were held to show no payment by him, at that time, of any fresh consideration for them. It was held that at the time of his reacquisition of the notes sued on by the indorsees they had matured, not because they were demand notes and therefore mature from date of delivery, but because of a prior demand by the payee for payment, and payment to him, by the maker, in the form of renewal notes, the old notes being left in payee's hands, prior to the indorsement. The notes had been delivered under an agreement that they were not to be negotiated, and the three original notes had been taken up from the indorsees, by the payee, with his worthless check, fraudulently given to the indorsees, by the payee, than whom, it was held, the maker had no higher rights, as against the indorsees. The conclusion was that in so receiving back the notes the maker did not give fresh value for them, and, even if he did, the notes, as to him, and because of such demand and payment, were then overdue, and, under the circumstances, the indorsees, were entitled to recover. That case involved a discussion of several provisions of the Bills of Exchange Act of 1882 (45 & 46 Vict., ch. 61).

Possibly the above cited and other English decisions on facts more analogous to those which the record in this case presents were overlooked by this court, in preparing the opinion in Cook. v. Cook; or, possibly, they were not considered pertinent to the issue then under treatment by this court.

Whatever may have been the rule of the common law as between the original parties to demand paper, the fair effect of the English decisions, excepting, perhaps, those governed by the Bills of Exchange Act of 1882 (Edwards v. Walters, 1896, 2 Ch., 157), prior to which "the law merchant formed part of the common law of England," appears to be "that a note payable on demand is not to be considered as overdue at the time of its delivery so as to deprive a subsequent purchaser of the protection given by the law merchant to bona fide purchasers of negotiable notes before maturity." Note to Bank v. Electric Co. (24 Ont. L. Rep., 57), set out in Am. Ann. Cas., 1912A, pp. 475 et seq. Said note declares, also, that the authorities, "almost unanimously," are to that effect, and undertakes to support the statement by citation of five above mentioned English cases, and of twenty-five cases from sixteen American States, and of Mitchell v. Catchings, 23 Fed., 710, and of Paine v. R. Co., 118 U. S., 152.

A complementary rule, as stated in the same note, is: "But a promissory note payable on demand is, as a general rule, held to be overdue

so as to subject anyone taking it to all defenses to which it would be open in the hands of the payee, unless it is transferred within a reasonable time after its date." In support of that statement said note cites twenty-seven cases from fourteen American States. To the same effect are 7 Cyc., p. 972, and cases cited in Note 18, and 8 Corpus Juris, 408, and cases cited in Note 90.

What is a reasonable time, under all the facts and circumstances of the case, is sometimes a question of law for the court, and sometimes a question of fact for the jury, under a proper charge of the court. 20 Texas, 699; 26 Texas, 473; 27 Texas, 587; 7 Cyc., 975, and cases cited in Note 25; 8 C. J., 408, Note 93, and p. 1070, Note 67.

In support of the foregoing general conclusions, I quote from various decisions, and cite additional authorities, as follows:

Upon the subject here under consideration the Supreme Court of the United States has said: "The rule, as to ordinary negotiable paper, payable on demand, is that it is not due, without demand, until after the lapse of a reasonable time within which to make demand; and what the length of that reasonable time is, may vary according to the circumstances of particular cases, and must be governed very largely by the intentions of the parties, as manifested in the character of the paper itself, and the purposes for which it is known to have been created and put in circulation." Morgan v. United States, 113 U. S., 501.

"In this country, a promissory note, payable on demand, has always been held to be overdue, so as to subject anyone taking it to all defenses to which it would be open in the hands of the payee, unless transferred within a reasonable time after its date; and what is reasonable time is a question of law, depending upon all the circumstances of the particular case." Paine v. R. Co., 118 U. S., 160.

"In the case of a bill, note, or check, payable on demand, no exact day of payment is fixed in the instrument. The general rule is that it must be presented for payment within a reasonable time, having in view ordinary business usages and the purposes which paper of that class is intended to subserve. The term 'overdue,' as applied to a demand bill of exchange, is used in different connections, in each of which it has a different meaning; and the failure to keep these distinctions in mind has perhaps led to some misapprehension regarding the present case. Sometimes it is used in reference to a right of action against a drawer or indorser. In that connection a bill is not overdue until presented to the drawee for payment, and payment refused. Sometimes the term is used in considering whether an indorser has been released by a failure of the holder to present the bill for payment, and to give the indorser notice of its dishonor within a reasonable time. Again, *the term is applied to a bill which has come into the hands of an indorser so long after its issue as to charge him with notice of its dishonor, and thus subject it in his hands to the defenses which the drawer had against it in the hands of the assignor.* It is in this last connection that the term 'overdue' is considered in the present case. That in

this case a bill may be said to be overdue, although it has never been in fact presented to the drawee for payment, is recognized everywhere throughout the books, and will be apparent, we think, on a moment's reflection. Suppose a draft has been held by the payee five years, without ever having been presented to the drawee for payment, and is then endorsed to another party. It would not be due so as to give a right of action against the drawer, because his contract is only to pay in case it is not paid by the drawee on presentation. But there would be no doubt that it would be overdue or dishonored, so as to charge it in the hands of the indorsee with any defenses which the drawer had against it in the hands of the payee, although, when he took it, it had never been presented for payment. The retention of a demand draft so long a time without presentment, when no defense exists against it, is so unusual and contrary to business usages that this circumstance would be held to charge the indorsee with notice when he purchased the draft that it was dishonored. The lapse of time would in such case be so great as to put a purchaser upon inquiry as to the reason why it was still outstanding and unpaid. The cases are almost innumerable in which it has been held that paper payable on demand had been outstanding so long when transferred, as to be deemed overdue and dishonored, so as to subject it, in the hands of the purchaser, to any defenses which the maker or drawer had against it in the hands of the payee; and in none of these cases is the question whether or not the paper had been, before the transfer, presented for payment to the maker or drawee, referred to as at all material. . . . That in determining whether an indorsee took a demand note or bill as dishonored and overdue paper, subject to all equities or defenses, the test is the length of time it has been outstanding, and not whether it has in fact been presented for payment, may be illustrated in another way. Suppose a draft had in fact been presented for payment, and payment refused, on the very day it was issued, it would then be *overdue as to the drawer,* so that an action would then lie against him. But suppose, immediately after such presentation, and on the same day, the holder should *indorse the draft to another,* who took it in good faith, for value, without notice of this actual dishonor; clearly *such indorsee would not take it as overdue paper,* subject to the equities or defenses against it in the hands of the former holder, because, a *reasonable time for its presentation not having expired,* there was nothing to put him upon inquiry, or to charge him with notice of such equities. Himmelman v. Hoteling, 40 Cal., 111, 6 Am. Rep., 600. In fact, in determining whether an indorsee takes such paper as overdue paper, subject to such defenses or equities, the question of actual demand and dishonor does not enter into the discussion. The point of inquiry is, had the paper been outstanding so long after its date as to put the purchaser upon inquiry, and charge him with notice that there is some defense to it? In view of the well known fact that bills of exchange are not always transmitted immediately for payment, but first pass through

the hands of several intermediate holders in the ordinary course of business, and in other cases are purchased by travelers to be carried with them instead of currency or coin, to be negotiated as occasion may require, we are not disposed to lay down any narrow rule on this subject. But in this case we think that the fact that this draft was, *without any explanation of the reason,* found outstanding nearly five months after its date, fully justified the trial court in holding it overdue and dishonored when Jordan took it, so as to charge it in his hands, or the hands of those who hold it under him, with any defense or set-off which the drawer had against it in the hands of Edison." (Italics mine.)   La Due v. Bank, 31 Minn., 33.   See, also, Brophy v. Wilson, 45 Mont., 489, 124 Pac., 510.

"In England it has been held, and such is the general current of authorities, that a negotiable note, payable on *demand,* does not become overdue by *mere lapse of time* so as to let in the maker to an equitable defense at the suit of the indorsee. (Barough v. White, 4 B. & C., 335; s. c., 10 E. C. L. R., 345.)   Something more than lapse of time must be brought to the knowledge of the indorser to charge him with the equities of the original parties.   The obvious policy of this rule is to make this species of paper *at all times* a safe circulating medium, and placing it upon the same footing of other negotiable paper before maturity.   In the case of Brooks et al. v. Mitchell (9 Mes. & Wels., 14), it was held that a note, payable on *demand,* with interest, made in 1824, and indorsed to the defendant in 1838, and upon which no interest had been paid for three years immediately preceding the indorsement, was not subject to an equitable defense as between the original parties.   It was urged in that case that the non-payment of interest for three years was sufficient to put the indorsee upon inquiry. But Parke, B., expressing the opinion of the court, said: "I can not assent to the arguments urged in behalf of the plaintiffs.   If a promissory note payable on demand, is after a certain time to be treated as overdue, although payment has not been demanded, it is no longer a negotiable instrument; but a promissory note, payable on demand, is intended to be a *continuing security.*   In this country the rule is somewhat modified, and the general doctrine is, that a promissory note, payable on *demand,* unless indorsed within a *reasonable time,* is considered overdue and dishonored.   (Citing cases.)   And what that reasonable time is, is a question for the determination of the court upon the facts of each particular case."   Carll v. Brown, 2 Mich., 401.

"In the late case of Barough v. White (6 Dowl. & Ryl., 379), all the judges concurred expressly in saying, that such a note can not be considered as dishonored till it is demanded and payment refused; and they put themselves on its being a continuing note upon its face.   When I say all the judges, I speak particularly of the report in Dowl. & Ryl. The same case is reported in 4 Barn. & Cress., 325, where Littledale, J., alone is made expressly to declare that as the true rule; though I

think what Bayley and Holroyd, Js., are there made to say, comes pretty much to the same thing." Wethey v. Andrews, 3 Hill (N. Y.), 582.

"Chancellor Kent says: 'But it has been a question, when a note payable on demand is to be deemed a note of time, so as to subject the endorsee, upon a subsequent negotiation of it to the operation of the rule. When the facts and circumstances are ascertained, the reasonableness of time is a matter of law, and every case will depend upon its special circumstances.' . . . In Wethey v. Andrews, 3 Hill, 582, Justice Cowen refers to the English authorities and cases, and appears to ground what he says upon what he presumes to be the law in England. He says: 'The cases furnish no principle for fixing the time with exactness, when a negotiable note on demand shall be deemed dishonored, so as to let in a defense against one to whom it has been negotiated.' . . . We are aware that, as a general rule, where all the facts are entirely undisputed, what is a reasonable time seems to be a question of law (citing cases); but in a case like the present, involving various considerations, and particularly the laws of a sister State, it appears to us that this question should have been submitted to the jury under proper instructions from the court." Barbour v. Fullerton, 36 Pa., 105.

"When a note, payable on demand, is to be deemed out of time, so as to subject the holder to the operation of this rule, is a question of law, to be determined by the circumstances of each case. There is no certain rule on the subject, nor is there any certain rule prescribing the precise time in which it must be presented for payment. Circumstances must control this also. 3 Kent's Com., 91." Stewart v. Smith, 28 Ill., 397.

"The second point raised presents a question often brought to the consideration of the court, and upon which no very well defined and precise rule of a general character has been adopted. The general doctrine is sufficiently well settled, that as to a promissory note payable on demand payment is to be demanded in a reasonable time; and if not demanded within such time, it is deemed overdue and dishonored. But what is a reasonable time, within which such demand must be made, can be said to have been ruled only in reference to particular cases, as they have occurred. The question has arisen in *two classes of cases: the one, as to what was a reasonable time to make such demand in order to charge an indorser; and the other,* like that in the case before us, *as to the length of time in which a note, payable on demand and remaining unpaid, would be held to be dishonored and subject to those grounds of defense which would have been open to the maker in a suit by the payee.* . . . Without attempting to prescribe any precise limit beyond which such note must be held to be dishonored, the court are of the opinion that the term of one month, as stated in the instruction to the jury, was sufficiently restricted in point of time, and that if the note was transferred to the plaintiff within that period, it was not a dishonored note." Ranger v. Carey, 1 Met. (Mass.), 369.

"In this State, a note, payable on demand, may be sued immediately. To decide that, on such a note, when made payable to bearer, or the order of the payee, such a defense can avail the maker, unless it is indorsed immediately, would destroy its negotiability. From the case of Barough v. White, 4 Barn. & Cress., 325, it is very clear the note would not be considered as overdue in England. In that case, Littledale, J., thought such a note could not be considered as overdue, unless some evidence was given that payment had been demanded, and refused. The rule, as settled in Massachusetts, appears to be the true and rational one, that, as it relates to the negotiability of notes payable on demand, *and in questions between the indorsee and indorser and between the indorsee and maker, they are to be considered as payable in a reasonable time, and what* is a reasonable time, is a question of law, to be decided by the court, on the facts which may be found by the jury." Dennett v. Wyman, 13 Vt., 485.

"The note, against the misapplication of which our aid is invoked in this cause, is payable on demand with interest, and was received for value by the defendants, Tredick, Stokes & Co., as they aver and admit in their answer, about thirteen months after its issue and date. In England, it would seem, such a note, indicating, it is said, on its face, a permanent loan or credit, is not deemed to be overdue during the period of legal limitation, without some evidence that payment has been demanded and refused. Byles on Bills, 131, 164, 165. This is not, however, the law of this country; but such a note is here held to be overdue *when it has run a reasonable time from its issue or date;* so that if it be negotiated after that time, the maker is let into proof of any equities in defense to an action of the indorsee upon it, of which he might have availed himself against the original payee." Atlantic Co. v. Tredick, 5 R. I., 171.

"The length of time that a note may remain due before this suspicion of its soundness attaches to it, depends upon circumstances not very clearly defined. But it would be doing violence to the decisions on this point, in this State and elsewhere, if we were to say that as between mercantile men, not shown to be residing at a great distance from each other, and with no impediments to easy and frequent communication, disclosed in the case, this note was not overdue and dishonored at a period, as early at least, as that at which it was negotiated. From the 14th of December to the first of the following August is such a length of time for a note of this description to remain due, that the purchaser might well have been put upon his inquiry as to the circumstances of its origin and its history, and be adjudged to have taken it with a full knowledge of them, and with all the disadvantages and risks attending the purchase of dishonored paper. Franklin v. March, 6 N. H., 364; Emerson v. Crocker, 5 N. H., 159, and cases there cited." Carlton v. Bailey, 27 N. H., 230.

"The authorities are agreed that *a demand note falls due within a reasonable time after its making.* What is a reasonable time depends

upon all the facts and circumstances surrounding the running of such time. If the length of time the note had been outstanding, taken in connection with all the other facts and circumstances, would justify a reasonable presumption in the mind of the indorsee at the time of the indorsement that payment upon the note had been refused, or would be refused if demand were made, then the indorsee takes the note as dishonored; otherwise not. 'The demand must be made in a reasonable time, and that will depend upon the circumstances of the case and the situation of the parties.' Losee v. Dunkin, 7 Johns., 70, 5 Am. Dec., 245." Bank v. Mining Co., 17 Colo. App., 452, 68 Pac., 981. See, also, Tomlinson Carriage Co. v. Kinsella, 31 Conn., 268.

"The rule in this country is that a note payable on demand is overdue for the purposes of negotiation unless it is negotiated within a reasonable time; and what constitutes such reasonableness of time can not be determined by any fixed and exact rules, but must depend upon the circumstances of each case. 1 Pars. Notes & Bills, 375-379; Herrick v. Woolverton, 41 N. Y., 581; Carll v. Brown, 2 Mich., 401. . . . 1 Daniel, Neg. Inst., secs. 607, 608. Whether what is a reasonable time is a question of law for the court, or a question of fact for the jury, is a matter which has been a good deal controverted; but, undoubtedly, the better view is that it is a mixed question of law and fact, and that, except where the facts are few, simple, and undisputed, in which case the court shall decide it, it should be left to be decided by the jury under the direction of the court, upon the particular circumstances of the case. 1 Daniel, Neg. Inst., sec. 612; 1 Pars. Notes & Bills, 269; Wyman v. Adams, 12 Cush., 210, 214. We think the question of reasonable time in the case at bar is a question for the jury under instructions from the court." Bacon v. Harris, 15 R. I., 599, 10 Atl., 647.

For compilations of cases involving various periods of time, running from one day to six years or more, see Tiedeman on Com. Paper sec. 296; Am. Ann. Cas., 1912A, note, p. 476; 7 Cyc., 850, Note 98.

Under an Arkansas statute on the subject of reasonable time, and on an issue as to whether plaintiff was the holder, "in due course," of a demand note, the question was held to be one for the jury. In re Philpot's Estate, 151 N. W. R., 825. See, also, Kerby v. Wade (Ark.), 142 S. W., 1121, and authorities there cited.

" 'A reasonable time must elapse before mere non-payment dishonors the bill or note. What this time is, has not been and can not be fixed by any definite and precise rule. One day's delay of paper on demand certainly would not dishonor it; five years' certainly would. And in each case, how many days, or weeks, or months, are requisite for this effect, must depend upon the test, whether so long a time has elapsed, that it must be inferred from the particular circumstances and the general conduct of business men, both of which should be considered, that the paper in question must have been intended to be paid within this period, and if not paid, must have been refused.' " Parsons on Notes & Bills, 263-4; quoted, approvingly, in Daniel on Neg. Insts., 5th ed.,

p. 776, note 67. The same note quotes at length from La Due v. Bank, 31 Minn., 33, supra, which, as above shown, makes important distinctions in the rules, based upon the relations of parties to the transactions.

For an interesting discussion involving such distinctions, see, also, the three opinions in Herrick v. Woolverton, supra, in which two judges dissented without writing.

"All the text-writers and the adjudicated cases tell us that a bill payable at sight, or at a fixed time after sight, or on demand, and a note payable on demand, must be presented for acceptance or payment, as the case may be, 'within a reasonable time.' But in determining what is reasonable time we are left a riddle which it is difficult to solve. . . . And an eminent jurist has said in respect to the time within which it is necessary to present for payment a note payable on demand in order to charge an indorser, that 'it depends upon so many circumstances to determine what is a reasonable time in a particular case, that one decision goes but little way in establishing a precedent for another.' " Daniel on Negotiable Instruments, 5th ed., sec. 604.

"What is reasonable time must depend upon the circumstances and in many cases upon the time, the mode, and the place of receiving the bills, upon the relations of the parties between whom the question arises." Id., sec. 605.

"It was formerly held that a bill or note, payable on demand, or at sight, was never overdue, so as to let in the equities, until there had been a demand. But the better and more modern rule is, that the demand must be made within a reasonable time after the date of the note, in order to claim the rights of a bona fide holder. And if the bill or note is transferred within a reasonable time, the transferee is not charged with constructive notice of the actual dishonor of the paper. It has been held that what is reasonable time, in this connection, is a question for the court to determine. It has also been held to be a question of fact for the jury, and also, a mixed question of fact and law. Probably, under varying circumstances, each of these propositions will find application." Tiedeman on Commercial Paper, sec. 296. See, also, Tiedeman on Bills & Notes, sec. 108.

"Note payable on demand is regarded by the best writers as a continuing security, especially if given for a loan or payable 'with interest,' and the rules of the last two paragraphs do not apply; but it will be a question for the jury on all the facts whether the presentment was reasonable or not. (Sharswood's Byles, 388.) The authorities, however, are in irreconcilable conflict, and the question, when it arises in any particular State, should be examined in the light of the decisions of that State." Morse, Banks & Banking, 5th ed., sec. 259.

It is declared in Sam v. Ludtke, 203 S. W., 98, by our Court of Civil Appeals for the First Supreme Judicial District, "it is stated in Cyc., vol. 7, pp. 847, 848, that while some courts hold that a demand is

necessary to start the running of the statute of limitation against a demand obligation, or at least that the payee must have a reasonable time to make demand before the statute becomes operative, most of the courts have held that paper payable on demand is due immediately, and the statute of limitation begins to run from the date of the paper." The question there before the court was one of limitation, so it was not necessary or appropriate for that court to quote further; but in the present case it is pertinent to observe that the same volume, pp. 849-50, under the heading of "Maturity for Purposes of Transfer," says, also: "In some cases it has been held that paper payable on demand is not overdue for the purpose of transfer, so as to make the transferee a purchaser after maturity, until after a demand has been made (Note 95), citing the English cases, Barough v. White, and Brooks v. Mitchell, supra), and some have held that it is overdue immediately after it is issued. Most of the courts, however, hold that it is not overdue for the purpose of transfer until after the lapse of a reasonable time, and that it is then overdue (Note 97, citing numerous cases). What is a reasonable time depends upon circumstances of the particular case, such as the form of the instrument, local usages, the interest of the parties, etc., and, ordinarily, is a question of law for the court. The quoted text is followed by a note citing several cases holding that the issue as to whether a reasonable time has elapsed is a question of law for the court, and by several cases holding that said question was one for the jury.

In England, in Canada, and in various American States, the question here involved, and others akin to it, seems to be controlled, at present, by statutes, which clear up various questions which long have vexed the courts of two continents and have caused much annoyance in the commercial world.

As related to the time of maturity of demand paper and the rights of an indorsee, the distinction between checks or drafts and promissory notes is one to which numerous decisions and some text-writers have adverted, but that distinction seems not to have been fully worked out and applied, generally. It is a distinction worthy of careful consideration, which I have not been able, thus far, to complete.

Upon the whole, and in view of the status of the question as it existed at common law and as reflected by the decisions of American courts and particularly in view of our statute adopting the common law, R. S., art. 5492, 2 Gam. Laws, 177, Act January 20, 1840, I am not content finally to refuse the writ of error now here sought, thereby peremptorily denying the indorsee relief in great measure.

Alternatively, I am of the opinion that the motion and also the writ of error should be granted, and the cause set down for oral argument, and that, thereafter, this court should definitely and fully declare, in a written opinion, the law of this case. Not uniformly, yet in numerous instances in this court, many of them being recent, wherein the con-

trolling issues unquestionably were of much less general importance and in much less confusion, like considerations have resulted in the granting of the writ of error.